1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

GRACE BURROWS, *et al.*,

             Plaintiffs,

       v.

3M COMPANY,

             Defendant.

Case No. C19-1649RSL

ORDER REGARDING
MOTIONS FOR SUMMARY
JUDGMENT

## I.    INTRODUCTION

This matter comes before the Court on (1) "Plaintiffs' Motion for Partial Summary Judgment" (Dkt. # 60) and (2) "3M Company's Motion for Summary Judgment" (Dkt. # 66). The Court, having reviewed the memoranda, declarations, and exhibits submitted by the parties,[1] finds as follows:

## II.    BACKGROUND

On May 22, 2018, Walter Burrows was employed as a foreman by Kiewit-Hoffman East Link Constructors ("Kiewit-Hoffman") to work on the E360 project in King County, Washington. Dkt. # 67-38 (Deposition of Christopher Salimbene) at 14, 26, 128, 150. During the course of his work at the top of a column, referred to as a "pier cap," located approximately 35 feet off the ground, Mr. Burrows lost his balance and fell over the edge. Id. at 108, 111, 208; Dkt. # 67-39 (Deposition of James Wulf) at 9–10; Dkt. # 15 at ¶ 9. At the time of the fall, Mr.

---

[1] The Court finds this matter suitable for disposition without oral argument.

ORDER REGARDING MOTIONS FOR
SUMMARY JUDGMENT - 1

Burrows was wearing a Nano-Lok Self-Retracting Lifeline (the "Nano-Lok"), but the Nano-Lok severed after making contact with the pier cap's concrete edge. Dkt. # 67-39 (Deposition of James Wulf) at 10; Dkt. # 15 at ¶ 10. Mr. Burrows died as a result of injuries from his fall. Dkt. # 67-25 at 2; Dkt. # 67-44 (Deposition of Geoff Owen) at 174. Defendant 3M Company does not dispute that it manufactured the Nano-Lok product. See Dkts. # 66, # 68.

Plaintiff Grace Burrows is the widow of Mr. Burrows and is the Personal Representative of the Burrows Estate. Am. Compl. at ¶¶ 1–2. The statutory beneficiaries of the Estate consist of the following individuals: Grace Burrows; Mr. Burrows' three adult daughters, Carrol Dobbins, Jennifer Sipes, and Tina Radovich; Mr. Burrows' stepson, Randy Morrow; and Mr. Burrows' stepdaughter, Denise Foy. Am. Compl. at ¶ 3. All of the statutory beneficiaries are also plaintiffs. Id. On September 13, 2019, Ms. Burrows initiated a wrongful death action in King County Superior Court. Dkt. # 1-1. Ms. Burrows filed the lawsuit on her own behalf and in her capacity as the Personal Representative of the State on behalf of the statutory beneficiaries listed above. Am. Compl. at ¶¶ 1–3.

Defendant removed this matter to federal court based on diversity jurisdiction. 28 U.S.C. § 1332(a); Dkt. # 1. On December 9, 2019, plaintiffs filed an amended complaint. Am. Compl. Plaintiffs assert claims for products liability, breach of warranty, and breach of implied warranty of merchantability. Am. Compl. at ¶¶ 23–45.

### III.    PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT
### (Dkt. # 60)

Plaintiffs filed a motion for partial summary judgment regarding three issues. Plaintiffs ask that the Court (1) strike defendant's affirmative defense regarding Kiewit-Hoffman's alleged negligence, (2) find as a matter of law that Kiewit-Hoffman's alleged negligence was not a superseding cause of Burrows' death,[2] and (3) find as a matter of law that plaintiffs prevail in their failure-to-warn claim. See Dkt. # 60 at 1–2.

---

[2] To avoid confusion, the Court refers to "Mr. Burrows" and "Ms. Burrows" in Section II, but for the remainder of the order, references to the name "Burrows" alone are intended to refer to Walter Burrows exclusively.

## A.  Legal Standard for Summary Judgment

Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); <u>Fresno Motors, LLC v. Mercedes Benz USA, LLC</u>, 771 F.3d 1119, 1125 (9th Cir. 2014). The moving party "bears the initial responsibility of informing the district court of the basis for its motion." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). Where the nonmoving party will bear the burden of proof at trial, the moving party need not "produce evidence showing the absence of a genuine issue of material fact," but instead may discharge its burden under Rule 56 by "pointing out . . . that there is an absence of evidence to support the nonmoving party's case." <u>Id.</u> at 325.

Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to designate "specific facts showing that there is a genuine issue for trial." <u>Id.</u> at 324. "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." <u>Arpin v. Santa Clara Valley Transp. Agency</u>, 261 F.3d 912, 919 (9th Cir. 2001) (internal citation omitted). "An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party." <u>In re Barboza</u>, 545 F.3d 702, 707 (9th Cir. 2008) (internal citation omitted). On cross-motions for summary judgment, the Court evaluates the motions separately, "giving the nonmoving party in each instance the benefit of all reasonable inferences." <u>Lenz v. Universal Music Corp.</u>, 801 F.3d 1126, 1130–31 (9th Cir. 2015) (citation omitted).

## B.  Issue One: Kiewit-Hoffman's Alleged Negligence and Immunity from Liability

Plaintiffs assert that partial summary judgment should be granted in their favor to strike 3M's affirmative defense of Kiewit-Hoffman's alleged negligence due to Kiewit-Hoffman's immunity as Burrows' employer. The Court finds only partly in plaintiffs' favor on this issue.

Plaintiffs argue that because Kiewit-Hoffman is immune from liability under Title 51 RCW, that defendant is precluded from raising Kiewit-Hoffman's alleged negligence as an affirmative defense and from arguing that this negligence constitutes a superseding cause. Both

1    parties rely on <u>Guerin v. Winston Industries Inc.</u>, 316 F.3d 879 (9th Cir. 2002). Plaintiffs
2    correctly observe that in <u>Guerin</u>, the Ninth Circuit acknowledged that an entity that is immune
3    under Title 51 as an employer cannot have liability allocated to it under RCW 4.22.070(1).
4    <u>Guerin</u>, 316 F.3d at 883–84. The parties agree that Kiewit-Hoffman is immune as an employer
5    under RCW 4.22.070(1). Dkts. # 60 at 13, # 68 at 14. Defendant argues, however, that Kiewit-
6    Hoffman's immunity does not preclude it from presenting evidence of Kiewit-Hoffman's
7    negligence because <u>Guerin</u> held that evidence regarding an employer's negligence "would still
8    have been admissible to negate an essential element of the plaintiff's case—proximate cause."
9    <u>Guerin</u>, 316 F.3d 884. The Court agrees with defendant on this point. <u>Guerin</u> holds that evidence
10   of third-party negligence—even by an immune third-party such as an employer—could be used
11   "not as proof of liability on the part of the employer," but as proof that defendant was not the
12   proximate cause of the injury. <u>Id.</u> at 885.

13   Although plaintiffs do not identify specifically numbered affirmative defenses they seek
14   to strike from defendant's Answer, to the extent defendant seeks to raise the affirmative defense
15   that fault should be apportioned to Kiewit-Hoffman, the Court agrees that RCW 4.22.070(1)
16   precludes such a defense because Kiewit-Hoffman is immune as an employer. Therefore,
17   paragraph 5.a of the defenses listed in defendant's Answer will be stricken as it seeks to
18   apportion fault to Kiewit-Hoffman pursuant to RCW 4.22.070. To the extent, however,
19   defendant seeks to demonstrate that it was not the proximate cause of Burrows' death, defendant
20   may argue that Kiewit-Hoffman's alleged negligence negated the proximate cause element. <u>Id.</u>
21   at 884–85.

22   Accordingly, plaintiffs' motion for summary judgment on issue one is GRANTED IN
23   PART.

24   ### C.  Issue Two: Kiewit-Hoffman's Conduct as a Superseding Cause

25   Plaintiffs contend that partial summary judgment should be granted in their favor to find
26   as a matter of law that Kiewit-Hoffman's alleged negligence was not a superseding cause. The
27   Court disagrees due to the existence of genuine issues of material fact.

28

ORDER REGARDING MOTIONS FOR
SUMMARY JUDGMENT - 4

1      Plaintiffs argue that Kiewit-Hoffman's actions cannot constitute a superseding cause as a

2  matter of law, and they rely upon Campbell v. ITE Imperial Corp., 107 Wn.2d 807 (1987). In

3  Campbell, the Washington Supreme Court considered whether an employer's failure to warn or

4  otherwise protect its employee from the dangers of electrical switchgear could have constituted

5  a superseding cause precluding attributing liability to the manufacturer of the switchgear, i.e.,

6  whether the employer's failure was foreseeable. 107 Wn.2d at 812–17. The switchgear was

7  unreasonably unsafe when unaccompanied by an adequate warning, and the court concluded that

8  the employer's negligence did not constitute a superseding cause where the circumstances

9  demonstrated that the employer's negligence was foreseeable. Id. at 814–17.

> 10    In sum, we hold that an employer's failure to warn or protect an employee from a
> 11    product which is unreasonably unsafe, unless accompanied by a warning, does not
> 12    constitute a superseding cause, unless (1) the employer's intervening negligence
>       created a different type of harm; or (2) the employer's intervening negligence
> 13    operated independently of the danger created by the manufacturer; or (3) the
>       employer had actual, specific knowledge that the product was unreasonably unsafe
> 14    and failed to warn or protect. Because there is no such evidence in the record of
> 15    this case, the trial court erred in giving a superseding cause instruction.

16  Id. at 817. In applying the first of the three superseding cause tests it articulated, the court held

17  that "[t]he harm caused by [the employer's] negligence—electrical shock and burns—is

18  identical to the harm brought about by [the manufacturer's] failure to warn," such that the

19  employer's intervening negligence did not create a different type of harm. Id. at 815. As for the

20  second superseding cause test, the court held that the manufacturer's failure to affix a warning to

21  its product "activated" the employer's negligence such that the employer's negligence did not

22  operate independently of the danger created by the manufacturer. Id. Lastly, the court held that

23  the third superseding cause test was not met where the record was "barren of evidence" that the

24  employer "actually knew the switchgear was unreasonably unsafe" and "no employee accidents

25  involving this switchgear had ever occurred." Id. at 816.

26

27

28

ORDER REGARDING MOTIONS FOR
SUMMARY JUDGMENT - 5

Here, defendant argues, among other things,[3] that Kiewit-Hoffman's "deliberate disregard of instructions broke the chain of causation by introducing a danger that would not have otherwise existed," i.e., that Kiewit-Hoffman's actions were unforeseeable as a matter of law. Dkt. # 68 at 17. Applying Washington law, this district held in Beard v. Mighty Life, Inc., 224 F. Supp. 3d 1131, 1137–39 (W.D. Wash. 2016), that a consumer's refusal to heed a manufacturer's warning not to operate a pallet jack on an incline, where the consumer testified that he understood the warning, was a superseding cause that broke the chain of legal causation required to establish proximate cause. In Beard, the court analyzed the Washington Supreme Court's decision in Baughn v. Honda Motor Co., Ltd., 107 Wn.2d 127 (1986), which relied upon Comment j of the Restatement (Second) of Torts § 402A: "Where warning is given, the seller may reasonably assume that it will be read and heeded; and a product bearing such a warning, which is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous." Beard, 224 F. Supp. 3d at 1138 (quoting Baughn, 107 Wn.2d at 661). Similar to Beard, where the consumer's disregard of the manufacturer's warning broke the causal chain, if Kiewit-Hoffman directed employees to use the Nano-Lok in defiance of the product's instructions, that would be unforeseeable as a matter of law. Plaintiffs claim that the facts demonstrate the Nano-Lok was used in accordance with its instructions and that Kiewit-Hoffman believed it had selected the product for a use consistent with the product's instructions. The Court finds that genuine issues of material fact exist on these issues.

Both plaintiffs and defendant cite to the 2017 instruction manual for the Nano-Lok (the "manual"). Dkt. # 77-1 at 85–107 (Ex. 11); Dkt. # 67-11 (Ex. 11). The manual warns against allowing the Nano-Lok to contact sharp edges numerous times. See Dkt. # 67-11 at 6, 11, 13–14 (Ex. 11 §§ 2.11, 2.12, 4.0, 4.5, 4.7(5)). The manual also warns against Nano-Lok contact with "abrasive surfaces." Dkt. # 67-11 at 13 (Ex. 11 § 4.5). The manual specifically cautions against

---

[3] Defendant makes various arguments in response to plaintiffs' motion for summary judgment on the superseding cause issue. See Dkt. # 68 at 16–19. The Court addresses defendant's other arguments in analyzing defendant's motion for summary judgment on this same issue (issue two of defendant's motion). See infra Section IV.B.

1  "working where the lifeline will be in contact with or abrade against unprotected sharp edges,"

2  and it instructs that "where contact with a sharp edge is unavoidable," the user must "cover the

3  edge with a protective material." Dkt. # 67-11 at 6 (Ex. 11 § 2.11).[4]

4      Plaintiffs admit that the manual warns against using the Nano-Lok with "sharp edges,"

5  but they claim that the edge at issue was not sharp or abrasive, and they assert that the manual

6  defines a sharp edge as having a radius of less than 1/8 in. (0.3 cm).[5] Dkt. # 60 at 6; Dkt. # 67-

7

8

9

10

---

11  [4] In addition to providing warnings regarding edges, the manual instructs that "[f]or users up to
12  310 lbs, (141 kg) the anchorage point must not be more than 3 ft (1 m) below the Dorsal D-Ring." Dkt.
   # 67-11 at 9 (Ex. 11 § 3.2). The parties do not dispute that Mr. Burrows weighed less than 310 lbs. See
13  Dkts. # 66 at 7, # 77 at 4–5. Defendant relies on an expert report by Bruce Simms, who estimates that
   Mr. Burrow's anchor point was "*approximately* 3' 6" below his dorsal d-ring." Dkt. # 67-34 at 9
14  (emphasis added). Mr. Simms bases his anchor point conclusion off of the notion that the anchor point
   was located only 18" above the walking surface of the pier cap. Id. The report cites photos and
15  "Deposition Exhibits" but fails to identify which depositions are at issue. Id. It is not clear that the girder
   stop was only 18" above the walking surface or that the anchor point used by Mr. Burrows was not
16  compliant with the manual's instructions. According to E360 project manager and Rule 30(b)(6)
   representative Geoff Owen's testimony, the pier caps are around "a foot and a half to 2 feet tall." Dkt.
17  # 67-44 (Deposition of Geoff Owen) at 142. Owen testified that "it would be close as to whether or not
   it was 3 feet below his D-ring." Id. at 141. Bart Trautman's declaration also puts the anchor point
18  distance in dispute. Dkt. # 77-2 (Declaration of Bart Trautman) at ¶ 9 (stating that the anchor point was
   less than three feet from the D-ring). While defendant contends that Trautman's new declaration "is the
19  kind of sham attempt to create a fact question that courts routinely strike," Dkt. # 78 at 10, the only
   discrepancy between Trautman's declaration and deposition that defendant complains about concerns
20  Trautman relying on the brochure—not Trautman's statement regarding the anchor point, see id. at 9–
   10. In sum, there are disputed facts regarding Mr. Burrows' compliance with the anchor point
21  instruction.

22      [5] Under § 4.7 of the manual, regarding the required criteria for use of the Nano-Lok on aerial
23  work platforms, the last criterion provided the following, in relevant part, "All sharp edges which the
   Nano-Lok SRL's lifeline may contact during a fall must be eliminated or covered over. All edges the
24  SRL lifeline may contact in a fall must be smooth with an edge radius of 1/8 in. (0.3 cm) or greater."
   Dkt. # 67-11 at 14 (Ex. 11 § 4.7(5)). Defendant points out that plaintiffs do not cite any evidence that
25  Burrows was working on an aerial work platform and argues that expanding this instruction to all sharp
   edges is improper. See Dkt. # 78 at 4–5. For purposes of this order, the Court need not evaluate the
26  merits of this argument because not all of plaintiffs' evidence pertains to the 1/8 in. radius issue.

27

28

ORDER REGARDING MOTIONS FOR
SUMMARY JUDGMENT - 7

11 at 14 (Ex. 11 § 4.7(5)). In support of plaintiffs' claim that the edge was not sharp or abrasive, plaintiffs cite the following:

1. An email from Kiewit-Hoffman's attorney, James Anderson, to the Washington State Department of Labor and Industries ("L&I"), stating that the edge involved was "beveled/rounded" and exceeded 1/8 in. Dkt. # 60 at 5; Dkt. # 60-1 at 88–93 (Ex. 10).

2. Confirmation by Christopher Salimbene, who served as Kiewit-Hoffman's safety manager for the E360 project, Dkt. # 67-38 (Deposition of Christopher Salimbene) at 16, to a statement in a proposed declaration that the edge involved was greater than 1/8 in. Dkt. # 60 at 5; Dkt. # 60-1 (Ex. 7) at 61–66.

3. Deposition testimony by Andrew Cowart, who described his role as "safety support," Dkt. # 60-1 at 208 (Deposition of Andrew Cowart), who supervised Salimbene at the time of the incident, Dkt. # 67-38 (Deposition of Christopher Salimbene) at 20, and who described the edge as a "rounded off corner." Dkt. # 60 at 5; Dkt. # 60-1 at 213 (Deposition of Andrew Cowart).

4. Deposition testimony by Bart Trautman, a construction manager at the time of the incident, describing the edge as "chamfered," not sharp. Dkt. # 72-1 at 14 (Deposition of Bart Trautman). When asked if the edge was abrasive Trautman answered no, and he described the edge as being "finished smooth." Id. at 14–15; see also Dkt. # 77-2 (Declaration of Bart Trautman) at ¶ 8 ("The pier cap edge that Mr. Burrows was working on was required to be a finished beveled concrete edge, not an 'abrasive' or 'sharp' edge.").

Defendant argues that Anderson's email to L&I is inadmissible hearsay and discusses facts for which there is no foundation for his personal knowledge. Dkt. # 68 at 10 n.50. Defendant also highlights that Salimbene testified that he rejected the proposed declaration plaintiffs' counsel drafted for him. Dkt. # 68 at 6; Dkt. # 67-38 (Deposition of Christopher Salimbene) at 39–41, 63–71. Plaintiffs failed to address these evidentiary issues, and thus the Court will not rely on Anderson's email or the proposed Salimbene declaration. Although defendant contends that none of the Kiewit-Hoffman employees who testified that the edge was not sharp actually objectively measured or evaluated the sharpness of the edge, Cowart testified to seeing a picture of the edge, Dkt. # 60-1 at 212–13 (Deposition of Andrew Cowart), and Trautman testified to being familiar with the finishing requirements for the pier caps, Dkt. # 72-1 at 15 (Deposition of Bart Trautman).

Plaintiffs' evidence on the question of the edge's sharpness/abrasiveness is disputed by evidence put forward by defendants. Defendant cites various sources for its contention that the

1   edge Burrows was working by was sharp or abrasive, rather than smooth, and thus should have

2   been covered with a protective material.[6] For example, defendant cites the deposition testimony

3   of Kiewit-Hoffman employees, including E360 project manager and Rule 30(b)(6)

4   representative Geoff Owen and E360 safety manager Christopher Salimbene, Dkt. # 67-44

5   (Deposition of Geoff Owen) at 51–52, 284, as well as reports by Kiewit-Hoffman and L&I.

6   Defendant also cites various sources for its contention that Kiewit-Hoffman ignored the Nano-

7   Lok's instructions when selecting the Nano-Lok for use in Burrows' work.

8          Defendant relies upon Owen's testimony that what most likely occurred in Burrows'

9   incident is that his Nano-Lok contacted a rough concrete edge while arresting his fall. Id. at

10  163–64. Defendant fails to mention, however, that Owen's testimony also reveals that Kiewit-

11  Hoffman did not consider the edge in question to be sharp, and Owen did not know whether

12  Kiewit-Hoffman considered the edge abrasive. Id. at 157–60, 215–17. Owen admitted that

13  Kiewit-Hoffman was not "actively aware" of the Nano-Lok warning regarding sharp edges set

14  out in § 2.12 ("Avoid working where the lifeline will be in contact with or abrade against

15  unprotected sharp edges. Where contact with a sharp edge is unavoidable, cover the edge with a

16  protective material."). Id. at 138–40. Owen also admitted that Kiewit-Hoffman was not aware of

17  the Nano-Lok instruction regarding anchor points set out in § 3.2 ("Where anchoring overhead

18  is not feasible, Nano-Lok SRLs may be secured to an anchorage point below the level of a user's

19  dorsal D-ring. For users up to 310 lbs, (141 kg) the anchorage point must not be more than 3 ft

20  (1 m) below the Dorsal D-Ring."). Id. at 140–41. These admissions support defendant's theory

21  that Kiewit-Hoffman disregarded the instructions. When Owen was asked about Kiewit-

22  Hoffman's process for selecting the Nano-Lok for Burrow's work, Owen recounted how various

23

24          [6] For example, defendant cites to expert reports by Dale Edwards (Dkt. # 67-33) and Dennis
25  Brickman (Dkt. # 67-32). Dkt. # 68 at 12 n.64. Plaintiffs object to defendant's experts' evidence "on the
    adequacy of warnings . . . due to defendant's failure to produce the design file which is a necessary
26  element to arrive at an opinion as to the adequacy of the warnings." Dkt. # 77 at 3. Defendant replied
    that its experts "relied on the same discovery produced to Plaintiff." Dkt. # 78 at 12 n.59. Given that
27  plaintiffs offered their own expert report regarding the adequacy of the warnings in their motion for
28  partial summary judgment, Dkt. # 60 at 7, the Court finds plaintiffs' argument lacks merit.

ORDER REGARDING MOTIONS FOR
SUMMARY JUDGMENT - 9

1   Kiewit-Hoffman personnel had only vague recollections as to how it was selected, and Kiewit-

2   Hoffman did not know which specific person designated the Nano-Lok for use. Id. at 21–25, 54,

3   112–17, 123.

4          Defendant relies upon testimony by Salimbene acknowledging that concrete can be

5   abrasive. Dkt. # 67-38 (Deposition of Christopher Salimbene) at 120–21. Salimbene also

6   testified that Kiewit-Hoffman's investigation into Walter's incident concluded that based off the

7   testing criteria they used, it was not a sharp edge, but he could not say whether it should have

8   been called a sharp edge "based off of what other people used for definitions." Id. at 44–47.

9          Defendant additionally cites Kiewit-Hoffman's incident/investigation report, which

10  conveyed Kiewit-Hoffman's assessment that the Nano-Lok "contacted a rough concrete edge

11  while arresting the fall," Dkts. # 67-20 at 2, # 67-38 (Deposition of Christopher Salimbene) at

12  186, # 67 at ¶ 20, as well as an L&I report concluding that Kiewit-Hoffman failed to "cover the

13  concrete edge with a protective material as instructed by the Manual," Dkt. # 67-27 at 3.

14         In short, there are genuine issues of material fact as to whether the Nano-Lok was used in

15  accordance with its instructions and the extent to which Kiewit-Hoffman disregarded those

16  instructions. It would be premature to find as a matter of law that Kiewit-Hoffman's actions

17  were not the superseding cause.

18         Accordingly, plaintiffs' motion for summary judgment on issue two is DENIED.

19                  **D. Issue Three: Plaintiffs' Failure-to-Warn Claim**

20         Plaintiffs contend that partial summary judgment should be granted in their favor to find

21  as a matter of law on their failure-to-warn claim. To be entitled to judgment as a matter of law

22  on this issue, there must be no genuine dispute of material fact that (1) defendant's product (2)

23  was not reasonably safe "because adequate warnings or instructions were not provided," RCW

24  7.72.030(1), and that (3) plaintiffs' harm was proximately caused by these inadequate warnings

25  or instructions. See Beard, 224 F. Supp. 3d at 1136; Thongchoom v. Graco Children's Products,

26  Inc., 117 Wn. App. 299, 304—05 (2003). A warning's adequacy is generally a question of fact,

27  except "when reasonable minds can reach only one conclusion from the admissible evidence."

28  Olivia Aguilar v. Am. Med. Sys., Inc., No. 2:20-CV-00259-SAB, 2020 WL 6504323, at *2

1   (W.D. Wash. Nov. 5, 2020). Here, reasonable minds would not be compelled to reach plaintiffs'

2   desired conclusion that the warnings were inadequate. Because defendant has put at issue

3   material facts related to the adequacy of the warnings and instructions, plaintiffs are not entitled

4   to summary judgment on issue three.

5   　　　Plaintiffs argue that the manual's warnings were not adequate because they did not warn

6   against using the product on a "leading edge," "beveled edge" or an "abrasive edge." Dkt. # 60

7   at 6. According to plaintiffs: "The fact that the product failed when it was properly affixed to an

8   anchorage point, in compliance with 3M's own instructions, after making contact with a smooth,

9   finished, rounded, chamfered edge is proof positive that the instructions were inadequate." Dkt.

10  # 72 at 12.[7] Defendant has put forward evidence that the instructions effectively warned against

11  the use of the Nano-Lok on sharp or abrasive edges and that the product was not used in

12  accordance with these instructions. See supra Section III.C (regarding issue two of plaintiffs'

13  motion). Thus, genuine issues of material fact exist regarding the extent of compliance with the

14  Nano-Lok instructions, and this precludes summary judgment on issue three.

15  　　　Accordingly, plaintiffs' motion for summary judgment on issue three is DENIED.

16  **IV.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. # 66)**

17  　　　Defendant filed a motion for summary judgment regarding five issues. Defendant asks

18  that the Court (1) find as a matter of law that plaintiffs' failure-to-warn claim fails,[8] (2) find as a

19  matter of law that Kiewit-Hoffman's conduct was the superseding cause of Burrows' death,[9] (3)

20  find as a matter of law that plaintiffs' breach of express warranty claim fails, (4) find as a matter

21

22  　　　[7] Plaintiffs' expert, Larry Londre, opined that defendant should have provided warnings not to
23  use the Nano-Lok near beveled edges, Dkt. # 60-1 at 148 (Ex. 12). Defendant has moved to exclude
    Londre's testimony. Dkt. # 64. Because the Court does not need to rely upon Mr. Londre's testimony in
24  ruling on the parties' motions for summary judgment, it is not essential to resolve Dkt. # 64 for purposes
25  of this order.

26  　　　[8] Issue one of defendant's motion overlaps with issue three of plaintiffs' motion. See supra
    Section III.D.
27  　　　[9] Issue two of defendant's motion overlaps with issue two of plaintiffs' motion. See supra
28  Section III.C.

1    of law that plaintiffs' claim for breach of implied warranty of merchantability fails, and (5)

2    dismiss the non-estate plaintiffs for lack of standing. See Dkt. # 66 at 10–24.

3                          **A. Issue One: Plaintiffs' Failure-to-Warn Claim**

4           Defendant contends that plaintiffs cannot establish any element of its failure-to-warn

5    claim and that it must therefore fail as a matter of law. Due to the existence of material facts, the

6    Court disagrees.

7           As an initial matter, in plaintiffs' response to defendant's motion for summary judgment,

8    plaintiffs request that the Court stay or deny defendant's motion pursuant to Federal Rule of

9    Civil Procedure 56(d). Plaintiffs argue that they need the Nano-Lok's "design file . . . to

10   determine whether or not the instructions and warnings for the lifeline were adequate for what

11   the lifeline was designed to do." Dkt. # 77 at 3. Pursuant to Rule 56(d), the Court may defer

12   considering a motion or deny a motion where the nonmovant shows "by affidavit or declaration

13   that, for specific reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ.

14   P. 56(d). Plaintiffs' request for a stay seems to fly in the face of its own motion for judgment as

15   a matter of law on its failure-to-warn claim. See Dkt. # 60. If plaintiffs' position is that they had

16   sufficient facts to *support* a motion for judgment as a matter of law, it's only logical that

17   plaintiffs would also have sufficient facts to *defend against* defendant's motion for judgment in

18   its favor on the same issue. In any event, the declaration plaintiffs' submitted here does not

19   provide specific reasons why plaintiffs cannot present facts essential to justify its opposition; the

20   declaration merely explains that plaintiffs forwarded a request for production for materials that

21   defendant has refused to provide and plaintiffs filed a motion to compel.[10] See Dkt. # 77-1 at

22   ¶ 10. The declaration does not elucidate what facts are essential to resist the summary judgment

23   motion or why they are essential. See California v. Campbell, 138 F.3d 772, 779–80 (9th Cir.

24   1998). Ultimately, the Court denies defendant's motion for summary judgment on issue one, but

25   not on Rule 56(d) grounds.

26

27          [10] The Court finds that ruling on the parties' motions for summary judgment does not require

28   resolving the outstanding discovery motions. Dkts. # 46, # 48.

1   Defendant argues that the Nano-Lok had adequate warnings and instructions and that

2   there is no evidence that the Nano-Lok was the proximate cause of Burrow's death. The Court

3   takes each of these arguments in turn.

4   As stated above, see supra Section III.D, a warning's adequacy is generally a question of

5   fact, except when reasonable minds can reach only one conclusion from the admissible

6   evidence. Olivia Aguilar, 2020 WL 6504323, at *2. Just as plaintiffs' motion for summary

7   judgment on issues two and three fail due to the parties offering disputed material facts

8   regarding the sharpness/abrasiveness of the edge at issue, defendant's motion for judgment on

9   plaintiffs' failure-to-warn claim is also unavailing. If the jury agrees with plaintiffs' position that

10  the edge at issue was not sharp or abrasive, the jury could reasonably find that the warnings did

11  not fairly convey the risks of the Nano-Lok severing upon contact with the edge.

12  With respect to defendant's argument that plaintiffs lack evidence that Nano-Lok

13  proximately caused Burrows' death, defendant maintains that the instructions at issue were not

14  read by Burrows and that Kiewit-Hoffman did not consult the manual when selecting the

15  product. Defendant cites cases for the principle that where a product's user fails to look for or

16  read the manual or labels, summary judgment is appropriate because a change to the warning

17  could not have prevented the harm. See Hiner v. Bridgestone/Firestone, Inc., 138 Wn.2d 248,

18  258–59 (1999); Stepp v. Takeuchi Mfg. Co., No. C07-5446RJB, 2008 WL 4460268, at *9

19  (W.D. Wash. Oct. 2, 2008). In the cases defendant cites, however, plaintiffs survived the harm

20  and conceded that they had not read the manual or labels at issue. Id. In contrast, Burrows is

21  deceased, and plaintiffs have not conceded that he or Kiewit-Hoffman personnel failed to

22  consult the manual. Rather, plaintiffs have identified evidence disputing defendant's assertions

23  to this effect. Blake Bosckis, the superintendent of the project, testified that when an employee

24  picks up gear for the first time, instructions come with it. Dkt. # 67-40 (Deposition of Blake

25  Bosckis) at 12; Dkt. # 77-1 at 47–48 (Deposition of Blake Bosckis). Trautman stated that

26  "employees who received the lifelines were expected to read the instructions and warnings that

27  accompanied the product." Dkt. # 77-2 (Declaration of Bart Trautman) at ¶ 5. Salimbene

28  testified that Kiewit-Hoffman would have had the manual prior to Burrows' accident, the

1    expectation was that employees would examine instruction manuals, and he was aware prior to

2    the accident that the Nano-Lok should not be used around sharp edges. Dkt. # 67-38 (Deposition

3    of Christopher Salimbene) at 206–08, 219. Salimbene also testified that "there was a lot of

4    pieces of that instruction manual we went through with [employees] on-site while we gave it to

5    them, as far as fitting, how to use it, how to put it on their equipment, limitation, et cetera." Id. at

6    206. With respect to who went through the instruction manual with employees, Salimbene

7    testified that occasionally it was him and other times it was a superintendent. Id. at 206.

8    Salimbene recalled going over the Nano-Lok gear with people, but he did not specifically recall

9    the exact limitations he pointed out. Id. at 206–07. Construing all inferences against the non-

10   moving party, the Court declines to conclude that defendant is not liable under a failure-to-warn

11   claim based on defendant's theory that no one at Kiewit-Hoffman read the manual.

12       Defendant's alternative theory on plaintiffs' failure to satisfy proximate cause is that the

13   users knew about the dangers at issue and did not follow applicable warnings. As discussed

14   above, see supra Section III.C, genuine issues of material fact exist regarding the extent that

15   Burrows used the Nano-Lok in compliance with its instructions on the night he fell, thereby

16   precluding summary judgment based on defendant's alternative theory.

17       Accordingly, defendant's motion for summary judgment on issue one is DENIED.

### B. Issue Two: Kiewit-Hoffman's Conduct as a Superseding Cause

19       Defendant presents three arguments regarding why defendant could not have reasonably

20   foreseen Kiewit-Hoffman's conduct: (1) Kiewit-Hoffman was the superseding cause because it

21   directed Burrows to contradict the product's instructions; (2) Kiewit-Hoffman had its own legal

22   obligation to protect Burrows and violated OSHA, Washington law, and ANSI standards

23   regarding fall protection measures, and Kiewit-Hoffman violated those standards; and (3)

24   Kiewit-Hoffman had actual, specific knowledge of the danger at issue, through its knowledge of

25   a former employee who died after his lifeline severed over a leading edge, yet Kiewit-Hoffman

26   still failed to protect Burrows. Dkt. # 66 at 20–22. The Court addresses each of these arguments

27   below.

28

ORDER REGARDING MOTIONS FOR
SUMMARY JUDGMENT - 14

1    Defendant's first argument fails to persuade the Court to rule as a matter of law in

2    defendant's favor because the facts are in dispute as to whether the Nano-Lok was used in

3    accordance with its instructions. See supra Section III.C.

4    Defendant's second argument fails on summary judgment as well. In Campbell, despite

5    the employer's apparent violation of state safety regulations and internal policy, which the

6    dissent characterized as "gross negligence," Campbell, 107 Wn.2d at 825–26 (Goodloe, J.,

7    dissenting), the Washington Supreme Court nevertheless concluded that the employer's

8    negligence was not a superseding cause because: (1) the employer's intervening negligence did

9    not create a different type of harm; (2) the employer's negligence did not operate independently

10   of the danger activated by the manufacturer; and (3) the employer did not have actual, specific

11   knowledge that the product was unreasonably unsafe and failed to warn or protect. Id. at 814–

12   17. Because Campbell's third superseding cause test overlaps with defendant's third superseding

13   cause argument, the Court addresses only the first and second superseding cause tests in

14   evaluating defendant's second superseding cause argument and saves its discussion of the third

15   test for its evaluation of defendant's third superseding cause argument.

16   In applying the first of the three superseding cause tests the Washington Supreme Court

17   articulated in Campbell, the court held that "[t]he harm caused by [the employer's] negligence—

18   electrical shock and burns—is identical to the harm brought about by [the manufacturer's]

19   failure to warn," such that the employer's intervening negligence did not create a different type

20   of harm. Id. at 815. Here, similarly, the harm caused by Kiewit-Hoffman's alleged negligence,

21   the severing of the Nano-Lok and resulting death of Burrows, is the same harm brought about by

22   defendant's alleged inadequate warnings. Therefore, the first superseding cause test does not

23   support defendant's argument.

24   Turning then to the second superseding cause test, the question is whether Kiewit-

25   Hoffman's negligence operated independently of the danger created by defendant's alleged

26   inadequate instructions. In Anderson v. Dreis & Krump Manufacturing Corp., 48 Wn. App. 432,

27   446 (1987), the Washington Court of Appeals concluded that an employer's modification to the

28   activation method of a product, a press for corrugating metal, did not operate independently

ORDER REGARDING MOTIONS FOR
SUMMARY JUDGMENT - 15

1   from the manufacturer's failure to equip the product with guards. The court reasoned that if the

2   guards had been present, the plaintiff's hand could not have been injured, no matter whether the

3   two-handed or one-handed button activation method was used. Anderson, 48 Wn. App. at 446.

4   Here, if the manual had warned against edges in the manner plaintiffs argue they should have

5   done, then irrespective of Kiewit-Hoffman's failure to abide by policies and regulations,

6   Burrows may not have been wearing the Nano-Lok near the edge where he fell. Notably, in

7   Anderson, L&I had inspected the press prior to the accident and found the press to be unsafe,

8   and the court concluded that the employer's failure to heed L&I's warning did not make the

9   employer's negligence a superseding cause as a matter of law. Id. at 448–89. Similarly, "in

10  Campbell, the employer's negligence alone was not sufficient to obviate the manufacturer's

11  liability: the employer's negligence must have been unforeseeable." McCrossin, Estate of

12  McCrossin v. IMO Indus., Inc., No. 3:14-CV-05382-RJB, 2015 WL 753580, at *3 (W.D. Wash.

13  Feb. 23, 2015). The foreseeability of an intervening act is ordinarily a question of fact for the

14  jury. Roth v. BASF Corp., No. C07-106MJP, 2008 WL 2117394, at *5 (W.D. Wash. May 19,

15  2008); Anderson, 48 Wn. App. at 443. Reasonable persons could disagree as to whether Kiewit-

16  Hoffman's alleged violation of its own policies and legal obligations was reasonably

17  foreseeable.

18          Finally, with respect to defendant's third superseding cause argument, the Court finds

19  that this argument fails because Kiewit-Hoffman did not have "actual, specific knowledge that

20  the product was unreasonably unsafe and failed to warn or protect." Campbell, 107 Wn.2d at

21  817. When the Campbell court applied this test, it determined that the third superseding cause

22  test was not met where the record was "barren of evidence" that the employer "actually knew

23  the switchgear was unreasonably unsafe" and "no employee accidents involving this switchgear

24  had ever occurred." Id. at 816. Defendant argues that Kiewit-Hoffman developed actual

25  knowledge after experiencing an employee accident involving Joseph Arrants, who died because

26  he fell and his lifeline severed over an edge. Dkt. # 66 at 2, 21. According to Cowart's

27  deposition testimony, however, Arrants was not using the Nano-Lok product at issue in this

28  case. See Dkt. # 67-41 (Deposition of Andrew Cowart) at 5–6. And according to Bosckis's

1   testimony, Arrants' lifeline severed along a sharp steel edge, Dkt. # 67-40 (Deposition of Blake

2   Bosckis) at 8, as opposed to a beveled concrete edge of disputed sharpness. Moreover, Owen

3   testified to using the Nano-Lok himself, and though he did not specifically recall using it on the

4   pier cap in question, he testified that it would not have surprised him if he had. Dkt. # 77-1 at

5   137 (Deposition of Geoff Owen). Owen also testified to being confident in relying upon the

6   Nano-Lok to protect his own life. Id. Ultimately, plaintiffs have put forward evidence indicating

7   that Kiewit-Hoffman did not have actual, specific knowledge that the product was unreasonably

8   unsafe. Therefore, on this record, defendants have failed to persuade the Court that summary

9   judgment is warranted on superseding cause.

10          Accordingly, defendant's motion for summary judgment on issue two is DENIED.

11                **C.  Issue Three: Plaintiffs' Breach of Express Warranty Claim**

12          Defendant asserts that plaintiffs' breach of express warranty claim fails for essentially

13   three reasons: (1) no contractual privity exists, (2) plaintiffs do not identify the express warranty

14   defendant allegedly made, and (3) there is no evidence that Burrows knew of the representations

15   made in the alleged express warranty and relied on the representations. Dkt. # 66 at 22–23. The

16   Court finds in defendant's favor on the basis of defendant's third argument, though the Court

17   will first address the privity issue.

18
19          Generally, contractual privity between the buyer and seller must exist before a
            plaintiff may maintain an action for a breach of warranty. Baughn,107 Wash.2d at
20          151, 727 P.2d 655. This requirement is relaxed if the manufacturer makes express
            representations in advertising, or in some other form, to the plaintiff. Id. at 151–
21          52, 727 P.2d 655. "Recovery for breach of an express warranty is contingent on a
            plaintiff's knowledge of the representation."
22

23   Thongchoom, 117 Wn. App. at 307 (quoting Touchet Valley Grain Growers, Inc. v. Opp &

24   Seibold Gen. Constr., Inc., 119 Wn.2d 334, 347 (1992)). Plaintiffs contend that because

25   Burrows played a role in the Kiewit-Hoffman's purchasing decision, the privity element is

26   established. Plaintiffs cite no authority for the principle that an employee's role in helping an

27   employer select a product establishes privity between the employee and manufacturer, and the

28   Court is aware of none. Even if the Court relaxed the privity requirement here, however,

1   plaintiffs' breach of express warranty claim fails. Plaintiffs allege that defendant "made a
2   number of express representations about its lifelines in the published promotional sales
3   brochure," and plaintiffs maintain that there is "strong reason to believe that the brochure was
4   reviewed by Mr. Burrows." Dkt. # 77 at 19; see also Dkts. # 67-3, # 77-1 at 34–38 (the
5   brochure). For this belief, plaintiffs assert that "[e]vidence has been elicited that Mr. Burrows
6   was part of the group of Kiewit-Hoffman employees who approved the selection" of the Nano-
7   Lok, and that "Blake Bosckis, Bart Trautman and Christo Salimbene had the brochure and relied
8   upon its representations." Dkt. # 77 at 19. The Court finds that plaintiffs have overstated the
9   evidence, which the Court summarizes below by each of the individuals who plaintiffs claim
10  relied upon the brochure's representations.

11       **Bosckis:** During his deposition, Bosckis testified that the brochure looked "familiar" and
12  he believed he had seen documents "similar" to it before Burrows' death, but he was not sure if
13  it was that exact brochure. Dkt. # 67-40 (Deposition of Blake Bosckis) at 4. When asked if there
14  were any materials he remembered looking at when making the decision to choose the Nano-
15  Lok, he responded, "No—not in particular. I do have memories of looking at literature," but he
16  did not identify the brochure as literature he relied upon. Id. at 17. And when asked about the
17  brochure again, and any "similar documents" (i.e., "advertising materials"), Bosckis testified
18  that he did not recall whether he saw the material before or after Burrows' death. Id. at 19–20.
19  With respect to who was involved in the decision-making process to select the product, Bosckis
20  identified himself, Burrows, and Salimbene, and he recalled having conversations with
21  Trautman. Id. at 16. In short, Bosckis testified neither to having the precise brochure in question
22  prior to Burrows' death, nor to relying upon it.

23       **Salimbene:** During his deposition, Salimbene agreed with the statement that it is
24  "reasonable for somebody who is obtaining safety equipment to be able to rely on the
25  manufacturer's representations." Dkt. # 67-38 (Deposition of Christopher Salimbene) at 229.
26  When asked about the brochure specifically, Salimbene testified that Kiewit-Hoffman used
27  information that was "contained in this document for selecting the use of the Nano-Lok
28  product," but he did not know "if it came specifically from this document." Id. at 74. Salimbene

ORDER REGARDING MOTIONS FOR
SUMMARY JUDGMENT - 18

1  also did not "recall ever . . . pulling this specific brochure out to look at it and say, we are going

2  to use our equipment based off of this." Id. Salimbene testified to not being aware of any

3  involvement by Burrows in selecting the Nano-Lok used on the day of Burrows' fall, though he

4  acknowledged it was possible that Burrows himself picked the Nano-Lok for use on the project.

5  Id. at 42, 198. Salimbene, like Bosckis, did not testify to relying upon the brochure at issue.

6      **Trautman:** During his deposition, Trautman first testified that Bosckis gave him the

7  brochure, Dkt. # 67-43 (Deposition of Bart Trautman) at 16–17, but then later testified that he

8  was not sure it was that exact brochure, but it was "similar to what [he] saw," id. at 20. In his

9  more recent declaration, Trautman identifies the specific brochure and states that he relied upon

10  it, but he does not explain why he was unable to provide that level of certainty in his deposition.

11  Dkt. # 77-2 (Declaration of Bart Trautman) at ¶ 7.

12      Even crediting Trautman's declaration that he relied on the brochure,[11] this mere scintilla

13  of evidence alone is not enough to create the reasonable inference that *Burrows* read the

14  brochure or relied upon its representations. Plaintiffs cited no evidence demonstrating that

15  Burrows actually read the brochure or was expected to have read it, and no one other than

16  Trautman claimed to have relied on the specific brochure. This is not sufficient to generate a

17

18  ───────────────

19      [11] Defendant contends that Trautman's new declaration "is the kind of sham attempt to create a

20  fact question that courts routinely strike." Dkt. # 78 at 10. In describing the "sham affidavit rule," the
    Ninth Circuit observed in Yeager v. Bowlin, 693 F.3d 1076, 1079–81 (9th Cir. 2012), that "newly-

21  remembered facts, or new facts, accompanied by a reasonable explanation, should not ordinarily lead to
    the striking of a declaration as a sham." While no reasonable explanation was provided in Trautman's

22  declaration, plaintiffs are not precluded from "clarifying prior testimony," and minor inconsistencies
    "afford no basis for excluding an opposition affidavit." Id. at 1081. The circumstances underlying the

23  striking of the declaration that was being reviewed in Yeager for abuse of discretion are unlike the
    present circumstances. The deponent in Yeager responded that he did not recall answers to

24  approximately 185 questions during the course of a deposition, but he was later able to recall
    comprehensive details in a declaration, which the district court found implausible, and the Ninth Circuit

25  affirmed. Id. at 1080–81. In Trautman's deposition, he first identified the brochure before later
    expressing doubt regarding his certainty that it was the exact same brochure. Dkt. # 67-43 (Deposition of

26  Bart Trautman) at 16–17, 20. It is plausible that Trautman could have reviewed the brochure again
    before his recent declaration and become more confident in his identification. Thus, the Court will not

27  strike Trautman's declaration under the sham affidavit rule.

28

1  genuine dispute of material fact that Burrows read and relied upon any particular representations
2  in the brochure.

3      Accordingly, defendant's motion for summary judgment on issue three is GRANTED.

4  ### D.  Issue Four: Plaintiffs' Breach of Implied Warranty Claim

5      Defendant asserts that plaintiffs' breach of implied warranty claim fails because of a lack
6  of privity and because defendant properly disclaimed any implied warranty in the product's
7  manual. The Court agrees. To recover on an implied warranty claim, plaintiffs must establish
8  privity. Thongchoom, 117 Wn. App. at 307–08. As stated above with regard to plaintiffs' breach
9  of express warranty claim, the Court is aware of no authority supporting plaintiffs' argument
10 that Burrow's role in Kiewit-Hoffman's purchasing decision establishes privity here. See Dkt.
11 # 77 at 18–19. Plaintiffs also offered no argument or evidence to rebut defendant's assertion that
12 defendant disclaimed the warranty at issue. See id. Accordingly, defendant's motion for
13 summary judgment on issue four is GRANTED.

14 ### E.  Issue Five: Standing of Non-Estate Plaintiffs

15     Defendant moves to dismiss the non-estate plaintiffs for lack of standing. Because the
16 estate's personal representative is the only person who may maintain a wrongful death action
17 under RCW 4.20.020, the Court dismisses the non-estate plaintiffs.

18     Although defendant only specifically identifies Carrol Dobbins, Jennifer Sipes, and Tina
19 Radovich as being among the non-estate plaintiffs, there are six adult beneficiaries in this action.
20 Grace Burrows, Randy Morrow, and Denise Foy comprise the other three beneficiaries. In the
21 Court's previous order granting defendant's motion for protective order, the Court explained as
22 follows regarding who may maintain a wrongful death claim under RCW 4.20.020:

23     Washington's wrongful death statute provides that "[w]hen the death of a person is
24     caused by the wrongful act . . . of another person, his or her personal
       representative may maintain an action against the person causing the death for the
25     economic and noneconomic damages sustained by the beneficiaries listed in RCW
       4.20.020[.]" RCW 4.20.010(1). The Washington Supreme Court has made clear
26     that wrongful death actions "must be brought by the personal representative of
       decedent's estate and *cannot* be maintained by the decedent's children or other
27     survivors." Beal for Martinez v. City of Seattle, 134 Wn.2d 769, 776 (1998)
28

ORDER REGARDING MOTIONS FOR
SUMMARY JUDGMENT - 20

1
2
3
4
5

(emphasis added); see also Atchison v. Great W. Malting Co., 161 Wn.2d 372, 376 (2007) ("In Washington, wrongful death actions are strictly creatures of statute . . . [and] Washington courts have consistently read this statute to mean that *only* a personal representative may bring an action for wrongful death."). "The personal representative, not the minor [or statutory beneficiaries], possesses the claim." Huntington v. Samaritan Hosp., 35 Wn. App. 357, 360-61 (1983) (citing Wood v. Dunlop, 83 Wn.2d 719, 723 (1974)).

6   Dkt. # 58 at 3 (omission in original).

7        Plaintiffs argue that the statutory beneficiaries "are real parties in interest per CR 17(a),"

8   citing Huntington v. Samaritan Hospital, 101 Wn.2d 466 (1984) and In Re Estate of Williams,

9   153 Wn. App. 1047, 2009 WL 5092865 (2009) (unpublished). Dkt. # 77 at 21. Plaintiffs contend

10  that the statutory beneficiaries were "required to participate" in the instant action, and if they

11  were "not included by the expiration of the statute of limitations, their claims would be barred."

12  Id. None of the cases plaintiffs rely upon, however, persuade the Court to retain the statutory

13  beneficiaries as parties in the above-captioned matter. In Huntington, the Washington Supreme

14  Court held that "only the personal representative can bring" a wrongful death action.

15  Huntington, 101 Wn.2d at 469. And in In Re Estate of Williams, the Washington Court of

16  Appeals merely recognized that statutory beneficiaries were real parties in interest in a

17  *malpractice action* against attorneys who had represented the personal representative of the

18  estate; with respect to *wrongful death actions*, the court acknowledged that "a personal

19  representative is the *exclusive* person" entitled to bring such an action. In Re Estate of Williams,

20  2009 WL 5092865, at *3 (emphasis added). Plaintiffs had also previously argued that Ueland v.

21  Reynolds Metals Co., 103 Wn.2d 131 (1984), requires that "all claims be brought together." Dkt.

22  # 28 at 4–5.[12] Ueland, however, is distinguishable from the instant case. Ueland concerned

23  minor children seeking damages for loss of consortium with their father, who survived the injury

24  at issue. Ueland, 103 Wn.2d at 132. Unlike the present case, in Ueland, there was no personal

25  representative maintaining an action on behalf of beneficiaries pursuant to RCW 4.20.020. See

26

27
28

_____

[12] Plaintiffs noted that prior pleadings before the Court briefed the current issue, including Dkt. # 28. See Dkt. # 77 at 20.

1  <u>id.</u> In short, plaintiffs have failed to persuade the Court that the non-estate plaintiffs have

2  standing in this wrongful death action. <u>See also</u> <u>Hatch v. Tacoma Police Dep't</u>, 107 Wn. App.

3  586, 589 (2001) (dismissing a widow's complaint for "postdeath" loss of consortium where she

4  was not the personal representative of her husband's estate); <u>Ostling v. City of Bainbridge</u>

5  <u>Island</u>, 872 F. Supp. 2d 1117, 1125 (W.D. Wash. 2012) (noting that the wrongful death statute

6  does not provide plaintiffs standing in their individual capacity).

7          Because Grace Burrows, in her capacity as personal representative of the estate, alone

8  possesses the claim, defendant's motion on issue five is GRANTED and the non-estate statutory

9  beneficiaries are hereby DISMISSED from this case.

10                                    **V.    CONCLUSION**

11          For all the foregoing reasons, IT IS HEREBY ORDERED THAT,

12          (1)     "Plaintiffs' Motion for Partial Summary Judgment" (Dkt. # 60), issue one, striking

13  defendant's affirmative defense, is GRANTED IN PART.

14          (2)     "Plaintiffs' Motion for Partial Summary Judgment" (Dkt. # 60), issue two, finding

15  as a matter of law that Kiewit-Hoffman's alleged negligence was not a superseding cause, is

16  DENIED.

17          (3)     "Plaintiffs' Motion for Partial Summary Judgment" (Dkt. # 60), issue three,

18  finding as a matter of law in favor of plaintiffs' on their failure-to-warn claim, is DENIED.

19          (4)     "3M Company's Motion for Summary Judgment" (Dkt. # 66), issue one, finding

20  as a matter of law that plaintiffs' failure-to-warn claims fails, is DENIED.

21          (5)     "3M Company's Motion for Summary Judgment" (Dkt. # 66), issue two, finding

22  as a matter of law that Kiewit-Hoffman was a superseding cause, is DENIED.

23          (6)     "3M Company's Motion for Summary Judgment" (Dkt. # 66), issue three, finding

24  as a matter of law that plaintiffs' breach of express warranty claim fails, is GRANTED.

25          (7)     "3M Company's Motion for Summary Judgment" (Dkt. # 66), issue four, finding

26  as a matter of law that plaintiffs' breach of implied warranty claim fails, is GRANTED.

27          (8)     "3M Company's Motion for Summary Judgment" (Dkt. # 66), issue five,

28  dismissing the non-estate plaintiffs, is GRANTED.

ORDER REGARDING MOTIONS FOR
SUMMARY JUDGMENT - 22

1    DATED this 29th day of March, 2021.

2

3

4                                           Robert S. Lasnik
                                            United States District Judge
5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ORDER REGARDING MOTIONS FOR
SUMMARY JUDGMENT - 23