UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GRACE BURROWS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> 3M COMPANY, <br><br> Defendant. | Case No. C19-1649-RSL <br><br> EXPERT TESTIMONY ORDER |

This matter comes before the Court defendant's: (i) "Motion to Exclude the Expert Testimony of Dr. Anthony Haftel" (Dkt. # 62) and (ii) "Motion to Exclude the Expert Testimony of Larry Steven Londre" (Dkt. # 64). Having reviewed the submissions of the parties and the remainder of the record, and considering the oral arguments conducted on August 2, 2022, the Court finds as follows:

This matter arises from a fatal construction accident. Walter Burrows was employed by Kiewit-Hoffman East Link Constructors as a foreman on the E360 project in King County, Washington. While working atop a "pier cap" column approximately 35 feet off the ground, Mr. Burrows lost his balance and fell over the edge. Mr. Burrows was wearing a 3M Nano-Lok Self-Retracting Lifeline ("Nano-Lok"), but the Nano-Lok severed after contacting the pier cap's concrete edge. Mr. Burrows fell to the ground and died due to his resulting injuries.

Plaintiffs bring failure-to-warn claims under Washington law, alleging that the warnings did not cover the type of edge that severed Mr. Burrows' Nano-Lok. Defendant moves the

EXPERT TESTIMONY ORDER - 1

Court to exclude the testimony of plaintiffs' experts, Dr. Anthony Haftel and Larry Steven Londre.

Federal Rule of Evidence 702 provides that expert opinion evidence is admissible if: (1) the witness is sufficiently qualified as an expert by knowledge, skill, experience, training, or education; (2) the scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (3) the testimony is based on sufficient facts or data; (4) the testimony is the product of reliable principles and methods; and (5) the expert has reliably applied the relevant principles and methods to the facts of the case. Pyramid Techs., Inc. v. Hartford Cas. Ins. Co., 752 F.3d 807, 813 (9th Cir. 2014) (citing Fed. R. Evid. 702).

In Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), the Supreme Court charged trial judges with the responsibility of acting as gatekeepers to prevent unreliable expert testimony from reaching the jury. The gatekeeping function applies to all expert testimony, not just testimony based on the hard sciences. Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999). To be admissible, expert testimony must be both reliable and helpful. The reliability of expert testimony is judged not on the substance of the opinions offered, but on the methods employed in developing those opinions. Daubert, 509 U.S. at 594-95. In general, the expert's opinion must be based on principles, techniques, or theories that are generally accepted in his or her profession and must reflect something more than subjective belief and/or unsupported speculation. Daubert, 509 U.S. at 590. The testimony must also be "helpful" in that it must go "beyond the common knowledge of the average layperson," United States v. Finley, 301 F.3d 1000, 1007 (9th Cir. 2002), and it must have a valid connection between the opinion offered and the issues of the case, Daubert, 509 U.S. at 591-92. "The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to the jury." Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc., 738 F.3d 960, 969 (9th Cir. 2013). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." Daubert, 509 U.S. at 564 (citation omitted). When an expert meets the threshold established by Federal

EXPERT TESTIMONY ORDER - 2

Rule of Evidence 702, "the expert may testify and the jury decides how much weight to give that testimony." Primiano v. Cook, 598 F.3d 558, 565 (9th Cir. 2010). Plaintiffs, as the parties offering Dr. Haftel and Mr. Londre as experts, have the burden of proving both the reliability and helpfulness of their testimony. Cooper v. Brown, 510 F.3d 870, 942 (9th Cir. 2007).

The Court considers defendant's objections to each expert's testimony in this context.

### I. Dr. Anthony Haftel

Defendant does not attack Dr. Haftel's qualifications. Rather, defendant objects to Dr. Haftel's testimony on the grounds that (A) it is not based on sufficient facts or data and is not the product of reliable principles and methods, and (B) its probative value is outweighed by the danger of unfair prejudice.

### A. Testimony Based on Sufficient Facts or Data and Product of Reliable Principles and Methods

Defendant attacks Dr. Haftel's testimony on various grounds relating to its base in facts and data and the principles and methods employed in its production. For the reasons explained below, the Court rejects these arguments.

First, defendant objects that "Dr. Haftel's conclusion that Mr. Burrows suffered pain before he died is not based on any facts or data, but instead on Dr. Haftel's 'experience' and anecdotal memories of patients he treated." Dkt. # 62 at 6. In the same vein, defendant argues that Dr. Haftel's opinions are based not on objective methodology, but on his personal recollections. See id. at 8-9. Defendant also argues that Dr. Haftel's comparison of Mr. Burrows to his previous patients is inappropriate because Dr. Haftel cannot state with certainty that his patients were assigned a Glasgow Coma Scale[1] score of three, which was the score assigned to Mr. Burrows. See id. at 6-7.

The Court declines to exclude Dr. Haftel's testimony on the ground that it based only on his experience as a doctor. It is undisputed that Dr. Haftel is a qualified emergency room

---

[1] "Based on motor responsiveness, verbal performance, and eye opening to appropriate stimuli, the Glasgow Coma Scale was designed and should be used to assess the depth and duration [of] coma and impaired consciousness." *Glasgow Coma Scale*, Center for Disease Control, https://www.cdc.gov/masstrauma/resources/gcs.pdf (last visited Aug. 12, 2022).

EXPERT TESTIMONY ORDER - 3

physician. In <u>Messick</u>, the Ninth Circuit held that the district court abused its discretion where it excluded a physician's testimony on the ground that the physician did not explain the scientific basis for his conclusion, but the physician had repeatedly stated that he relied on his own "extensive clinic experience," as well as his examination of the patient's records, treatment, and history. <u>Messick v. Novartis Pharms. Corp.</u>, 747 F.3d 1193, 1198 (9th Cir. 2014). As the Ninth Circuit explained, "Medicine partakes of art as well as science, and there is nothing wrong with a doctor relying on extensive clinical experience." <u>Id.</u> Here, Dr. Haftel's report indicates that his opinions are based on his thirty-five years of experience as an emergency department physician working in high acuity trauma centers and his recollection of at least one academic article, as well as his review of Mr. Burrows' EMS run sheet, partial medical records, and autopsy. <u>See</u> Dkt. # 63-1 at 3-4. The Court concludes that Dr. Haftel has presented a sufficient factual and methodological basis for his conclusions.

Defendant argues that Dr. Haftel cannot state that his past patients were assigned a Glasgow Coma Scale score of three because he did not go back and review their records. However, Dr. Haftel explained in his deposition that he did not need to do this because he was only considering patients that received CPR, and anyone receiving CPR would have a Glasgow Coma Scale score of three. <u>See</u> Dkt. # 63-2 at 44. Dr. Haftel's response that he could not say with certainty that *he* assigned the patients a Glasgow Coma Scale score of three was because sometimes nurses assign the score. <u>See id.</u> at 50-51. "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." <u>Daubert</u>, 509 U.S. at 564. If defendant believes that Dr. Haftel's opinions rest on a shaky foundation, it may utilize these attacks.

Second, defendant objects that Dr. Haftel's classification of Mr. Burrows pain is deficient because he uses descriptive words such as "excruciating," "extreme," "crushing," and "intense," and these are subjective, non-clinical terms. <u>See</u> Dkt. # 62 at 7-8. Defendant further objects that Dr. Haftel's opinion is inconsistent because he recognizes that unconscious patients cannot report their own subjective pain but nonetheless opines that Mr. Burrows experienced pain while

EXPERT TESTIMONY ORDER - 4

unconscious. See id. at 7-8. Defendant also takes issue with Dr. Haftel's statement that Mr. Burrows suffered an eleven on a subjective pain scale of one to ten. See id at 1-2.

"'A trial court should admit medical expert testimony if physicians would accept it as useful and reliable,' but it need not be conclusive because 'medical knowledge is often uncertain.'" Primiano, 598 F.3d at 565 (quoting United States v. Sandoval-Mendoza, 472 F.3d 645, 655 (9th Cir. 2006)). In particular, "[p]ain is subjective and cannot be described in precise terms." Bibeau v. Pac. Nw. Rsch. Found. Inc., 188 F.3d 1105, 1108 (9th Cir. 1999), opinion amended on denial of reh'g, 208 F.3d 831 (9th Cir. 2000). Perhaps Dr. Haftel's terms are neither clinical nor precise, but medicine involves a degree of uncertainty and pain lacks objective precision. Defendant is welcome to cross-examine Dr. Haftel regarding the meaning of his terms. Prohibiting Dr. Haftel from utilizing subjective pain descriptors would effectively bar Dr. Haftel from offering any opinions regarding the severity of Mr. Burrows' pain. The Court declines to do so.

Regarding the ability of an unconscious person to experience pain, the Court disagrees that Dr. Haftel's opinion is inconsistent. Dr. Haftel made it clear in his deposition that he recognized that unconscious patients cannot report their own subjective pain, but that in his experience, people who have these injuries usually experience pain at these levels. See Dkt. # 63-2 at 53-59, see also Dkt. # 63-1 at 3-4. Regarding defendant's objections to Dr. Haftel's use of a subjective "one to ten" pain scale, the Court notes that Dr. Haftel's report does not utilize this scale. See generally Dkt. # 63-1. It was defendant's counsel that prompted Dr. Haftel to rank pain on this scale during his deposition. See Dkt. # 63-2 at 54-59.

To the extent that defendant argues that Dr. Haftel's statement that Mr. Burrows suffered an eleven on a subjective pain scale of one to ten "makes a mockery of evaluating patient pain and has no foundation in science," Dkt. # 62 at 1-2, 5, the Court disagrees. This statement was made during Dr. Haftel's deposition, and he clarified that the scale only goes up to ten, but that he was "accentuating." See Dkt. # 63-2 at 58, 62. The Court will not exclude Dr. Haftel's testimony for utilizing acknowledged hyperbole during a deposition. The Court, of course,

assumes that Dr. Haftel will not repeat this statement before the jury, and prohibits plaintiff's counsel from eliciting this statement from Dr. Haftel.

The Court will conduct a brief Daubert hearing with Dr. Haftel prior to his testimony before the jury to ensure that he understands the parameters of his opinion testimony.

Third, defendant argues that its expert, Dr. Odey Ukpo, concluded that Mr. Burrows suffered a diffuse axonal injury,[2] and therefore would have experienced no pain. Dkt. # 62 at 4-5. While it appears that Dr. Haftel agrees that a patient who has suffered a diffuse axonal injury would likely not experience pain, Dr. Haftel disagrees with this diagnosis. See Dkt. # 71 at ¶¶ 7-11. To the extent that defendant disagrees with Dr. Haftel's characterization of the facts or his conclusion that Mr. Burrows did not experience a diffuse axonal injury, "issues regarding the correctness of his opinion, as opposed to its relevancy and reliability, are a matter of weight, not admissibility." Messick, 747 F.3d at 1199 (citing Kennedy v. Collagen Corp., 161 F.3d 1226, 1229-30 (9th Cir. 1998)). The Court declines to exclude the testimony on this ground.

## B. Balancing Probative Value to Risk of Unfair Prejudice

Defendant also argues that Dr. Haftel's testimony should be excluded under Federal Rule of Evidence 403 because its probative value is outweighed by the danger of unfair prejudice. In particular, defendant again objects to Dr. Haftel's use of the subjective terms "excruciating," "extreme," "crushing," and "intense" to describe Mr. Burrows pain, and analogizes to this Court's decision in Ilyia v. El Khoury, No. C11-1593RSL, 2013 WL 5441356 (W.D. Wash. Sept. 27, 2013).

"The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

---

[2] "Diffuse axonal injury is the shearing (tearing) of the brain's long connecting nerve fibers (axons) that happens when the brain is injured as it shifts and rotates inside the bony skull." *Traumatic Brain Injury*, Johns Hopkins Medicine, https://www.hopkinsmedicine.org/health/conditions-and-diseases/traumatic-brain-injury (last visited Aug. 12, 2022).

EXPERT TESTIMONY ORDER - 6

First, as explained above, the Court will not exclude Dr. Haftel's testimony because he used subjective descriptions of pain.  Dr. Haftel's terminology is undoubtedly strong, but the parties agree that Mr. Burrows' pain is at issue, and these terms may assist the jury to understand his alleged pain.  Federal Rule of Evidence 403's concern is "unfair" prejudice, and any prejudice that may result from Dr. Haftel's testimony does not rise to this level.  Defendant is welcome to offer Dr. Ukpo's contrary testimony.

Second, defendant's analogy to Ilyia does not hold up.  First, Ilyia was decided under Federal Rule of Evidence 702, not 403.  Ilyia, 2013 WL 5441356 at *1.  Second, in Ilyia, this Court concluded that a psychiatrist's expert testimony regarding a diagnosis of impairment was not reliable because it was based on a few anecdotal stories about the individual in question and the offering party provided no evidence that this was a sufficient ground for a forensic psychiatrist to make a diagnosis.  Id. at *1-2.  The Court further concluded the testimony was not helpful because it was overly vague regarding the nature of the impairment and lacked basis in medical examination and expertise.  Id. at *2.  Here, as explained above, Dr. Haftel's opinion is based on sufficient facts and data, and it is based on his expertise.  To the extent that defendant argues that Dr. Haftel's testimony is equivalent to that of the psychiatrist in Ilyia because both assume the role of telling the factfinder what outcome to reach, there is nothing inherently wrong with offering such an opinion.  See Fed. R. Evid. 704(a) ("An opinion is not objectionable just because it embraces an ultimate issue.").

## II. Larry Steven Londre

Defendant objects to Mr. Londre's testimony on the grounds that (A) he is unqualified to offer expert testimony on the adequacy of the Nano-Lok's warnings, (B) his opinions have no methodology, and (C) his opinions are not relevant or helpful to the jury.

### A. Expert Qualification

Mr. Londre is a business, marketing, and advertising professional.  He holds a Master of Business Administration, with an emphasis in marketing, from the University of Southern California, and has extensive teaching and business experience.  See Dkt. # 65-3 at 4-5, 21-42.  Defendant argues Mr. Londre's expertise fails to qualify him to testify on whether a product's

EXPERT TESTIMONY ORDER - 7

warnings adequately warn against potential hazards. Defendant's objections to Mr. Londre's expertise are largely focused on his lack of technical expertise in the development of product warnings, the use of warnings for fall protection equipment, and the degree to which warnings mitigate potential hazards under industry standards. See Dkt. # 64 at 7-9. These objections are misplaced. Mr. Londre does not purport to opine on technical matters. Rather, Mr. Londre's opinions go to defendant's promotion of the Nano-Lok, the marketplace for the Nano-Lok, and the lack of communications indicating that the Nano-Lok should not be used near a beveled edge, which he equates to a failure to warn a reasonable buyer or consumer. See Dkt. # 65-3 at 6-7, 11, 14, 15, 16, 18. Mr. Londre's marketing and advertising background sufficiently qualifies him as an expert in these matters.

### B. Testimony Product of Reliable Principles and Methods

Defendant next argues that Mr. Londre's methodology for reaching his opinions is nonexistent. Mr. Londre's report does not clearly explain his methodology, although it provides a long list of documents and materials that he reviewed in forming his opinions. See Dkt. # 65-3 at 39-41. Mr. Londre's declaration submitted with plaintiffs' response states, "My methodology applies marketing, sales, promotion, communication and advertising standards such as the requirement that all statements and representations are true, ethical and not deceptive." Dkt. # 70 at 11.

"[T]he trial court has discretion to decide how to test an expert's reliability as well as whether the testimony is reliable, based on 'the particular circumstances of the particular case.'" Primiano, 598 F.3d at 564 (quoting Kumho Tire Co., 526 U.S. at 150, 152). Simply put, it is unclear what principles and methods Mr. Londre purports to have employed. To the extent that Mr. Londre identified a marketing standard and applied it to the facts of the case to reach his opinions, he did not engage in a transparent process. The Court therefore concludes that Mr. Londre's testimony is not the product of reliable principles and methods and excludes Mr. Londre's testimony on this ground.

**C. Testimony Relevant and Helpful to Jury**

Defendant's final objection is that Mr. Londre's testimony is neither relevant nor helpful to the jury. The Court agrees. The relevance of Mr. Londre's opinions that (1) defendant promotes the Nano-Lok with the ultimate goal of making sales, Dkt. # 65-3 at 6-7, and (2) defendant makes and sells the Nano-Lok in a competitive marketplace, id. at 11, is unclear to the Court. Neither defendant's commercial goals nor the state of the market would assist the jury in determining the key issue – *i.e.*, whether the Nano-Lok's warnings were sufficient. See RCW 7.72.030(1).

In addition to his ultimate opinion that defendant failed to adequately warn that the Nano-Lok should not be used near a beveled edge, Mr. Londre offers three other opinions: (1) defendant's promotion materials describe the Nano-Lok as "the ultimate in fall protection for any work environment," and the word "ultimate" means to a reasonable consumer "the best achievable or imaginable of its kind" and "incapable of further analysis, division, or separation," (2) defendant promotes and advertises the Nano-Lok with the line, "A complete safety solution in the palm of your hand," and (3) defendant failed to warn that the Nano-Lok is not to be used near a beveled edge because Mr. Londre was unable to find drawings or illustrations demonstrating this limitation. Dkt. # 65-3 at 14, 15, 16, 18. Even assuming these opinions are relevant, they are not helpful as required under Daubert and its progeny because they do not appear to be based on any sort of expertise. Mr. Londre's conclusion regarding the meaning of the word "ultimate" to the "reasonable consumer" is based on Google and Merriam-Webster's definitions of "ultimate." See id. at 14 n.10. Mr. Londre's opinion that defendant uses the line, "A complete safety solution in the palm of your hand," is supported only by descriptions of defendant's brochures. See id. at 15-16. Finally, Mr. Londre's statement that defendant failed to warn that the Nano-Lok should not be used near a beveled edge is supported by his review of the Nano-Lok device and relevant brochures and instruction manuals, as well as testimony of Kiewit-Hoffman personnel to the effect that the Nano-Lok was approved for use on the pier cap from which Mr. Burrows fell. See id. at 16-17. The jury is equally capable of examining the evidence that Mr. Londre relies upon, and his conclusions invade its province.

EXPERT TESTIMONY ORDER - 9

The Court therefore excludes Mr. Londre's testimony because it is both unreliable and unhelpful.

### III. Conclusion

For all of the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendant's Motion to Exclude the Expert Testimony of Dr. Anthony Haftel (Dkt. # 62) is DENIED.
2. Defendant's Motion to Exclude the Expert Testimony of Larry Steven Londre (Dkt. # 64) is GRANTED.

DATED this 12th day of August, 2022.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge