UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| GRACE BURROWS, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> 3M COMPANY, <br><br> Defendant. | Case No. C19-1649-RSL <br><br> ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS |

This matter comes before the Court on plaintiff's "Motion for Sanctions and Default" (Dkt. # 97). The Court, having reviewed the submissions of the parties and the remainder of the record, finds as follows:

**I.    Background**

This matter arises from a fatal construction accident. Walter Burrows was employed by Kiewit-Hoffman East Link Constructors as a foreman on the E360 project in King County, Washington. While working atop a "pier cap" column approximately 35 feet off the ground, Mr. Burrows lost his balance and fell over the edge. Mr. Burrows was wearing a 3M Nano-Lok Self-Retracting Lifeline ("Nano-Lok"), but the Nano-Lok severed after coming into contact with the pier cap's concrete edge, causing Mr. Burrows to fall to the ground. Mr. Burrows died due to his injuries from the fall.

Plaintiff Grace Burrows, the widow of Mr. Burrows and the Personal Representative of the Burrows Estate, filed suit against Nano-Lok manufacturer 3M, bringing claims of products

liability under a failure-to-warn theory, breach of warranty, and breach of implied warranty of merchantability. Dkt. # 13 (Amended Complaint).

Both parties moved for summary judgment in late 2020, before the Court had ruled on outstanding discovery motions. *See* Dkts. # 60, 66. On January 6, 2021, the Court ruled on both parties' motions for summary judgment. Dkt. # 82. The Court concluded that issues of material fact precluded summary judgment on the failure-to-warn claim, but dismissed plaintiff's breach of express warranty and breach of implied warranty of merchantability claims. *Id.* Accordingly, only plaintiff's failure-to-warn claim remained.

On August 12, 2022, the Court ruled on discovery disputes between the parties. Dkt. # 91. Central to these disputes was whether plaintiff was entitled to discovery related to the Nano-Lok's design. *Id.* Defendant contended that design discovery was irrelevant to failure-to-warn claims. *Id.* However, the Court explained that "[i]n a failure-to-warn claim, 'the trier of fact must balance the likelihood that the product would cause the harm complained of, and the seriousness of that harm, against the burden on the manufacturer of providing an adequate warning." *Id.* at 2 (quoting *Ayers v. Johnson & Johnson Baby Prod. Co.*, 117 Wn. 2d 747, 765 (1991)). The Court explained that because this "balancing cannot be achieved without considering the nature of the product," plaintiff was "entitled to design discovery in pursuit of [her] failure-to-warn claims." *Id.* Accordingly, the Court ordered defendant to respond to plaintiff's requests for production of design-related materials. *Id.* However, the Court declined to award either party attorney's fees in connection with the motion. *Id.* at 9. The Court stated, "The heart of the issue . . . was whether plaintiffs were entitled to design discovery in relation to their failure-to-warn claims. This was a genuine dispute, and the conduct of both parties was therefore substantially justified." *Id.*

II. **Motion for Sanctions**

Plaintiff alleges that the documents produced by defendant in response to the Court's August 12 discovery order reveal that defendant "failed to comply with prior discovery obligations" and as a result, "plaintiff has been prejudiced to such an extent that a fair trial is not

ORDER DENYING PLAINTIFF'S MOTION FOR
SANCTIONS - 2

possible." Dkt. # 97 at 1. Accordingly, plaintiff asks the Court to impose an order of "default on liability" against defendant as well as "substantial attorney's fees." *Id.*

Under Federal Rule of Civil Procedure 37, if a party "fails to obey an order to provide or permit discovery" the Court "may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). Such orders may include:

> (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii) striking pleadings in whole or in part;
> (iv) staying further proceedings until the order is obeyed;
> (v) dismissing the action or proceeding in whole or in part;
> (vi) rendering a default judgment against the disobedient party
> . . . .

Fed. R. Civ. P. 37(b)(2)(A)(i)-(vi). These sanctions may also be imposed where "a party fails to provide information or identify a witness as required by Rule 26(a) or (e)." Fed R. Civ. P. 37(c)(1)(C). Additionally, in the Ninth Circuit, district "courts have inherent power to dismiss an action when a party has willfully deceived the court and engaged in conduct utterly inconsistent with the orderly administration of justice." *Wyle v. R.J. Reynolds Indus., Inc.*, 709 F.2d 585, 589 (9th Cir. 1983).

Discovery sanctions are reviewed under an "abuse of discretion" standard. *Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997). "Where the drastic sanctions of dismissal or default are imposed, however, the range of discretion is narrowed and the losing party's noncompliance must be due to willfulness, fault, or bad faith." *Henry v. Gill Indus.*, 983 F.2d 943, 946 (9th Cir. 1993). "Disobedient conduct not shown to be outside the control of the litigant is sufficient to demonstrate willfulness, bad faith, or fault." *Hyde & Drath v. Baker*, 24 F.3d 1162, 1167 (9th Cir. 1994) (sanction upheld where defendants repeatedly failed to attend scheduled depositions).

ORDER DENYING PLAINTIFF'S MOTION FOR
SANCTIONS - 3

A party moving for the drastic sanction of default must make this showing given the particularly "harsh" nature of the sanction, which is only "justified in extreme circumstances." *Valley Eng'rs, Inc. v. Elec. Eng'g Co.*, 158 F.3d 1051, 1057 (9th Cir. 1998). "Due process limits the imposition of the severe sanctions of dismissal or default to 'extreme circumstances' in which 'the deception relates to the matters in controversy' and prevents their imposition 'merely for punishment of an infraction that did not threaten to interfere with the rightful decision of the case.'" *Fjelstad v. Am. Honda Motor Co.*, 762 F.2d 1334, 1338 (9th Cir. 1985) (quoting *Wyle*, 709 F.2d at 589, 591).

The Ninth Circuit has "identified five factors that a district court must consider before dismissing a case or declaring a default: '(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions.'" *Adriana Int'l Corp. v. Thoeren*, 913 F.2d 1406, 1412 (9th Cir. 1990).

Here, the Court finds that plaintiff has failed to demonstrate that this is an "extreme circumstance" warranting the dramatic sanction of default. First, plaintiff fails to establish that defendant acted willfully or in bad faith. Second, plaintiff fails to establish that the risk of prejudice she faces comes anywhere close to outweighing the public's interest in and defendant's due process right to disposing of the case on its merits.

**A. Willfulness, Fault or Bad Faith**

Plaintiff argues that the sanction of default is appropriate here because defendant willfully failed to comply with its discovery obligations. Dkt. # 113 at 1. The Court disagrees with plaintiff's assertion that defendant's actions constitute a willful violation or bad faith and declines to impose the extreme sanction of default here.

   **i. Initial Discovery Responses**

Plaintiff first claims that defendant willfully violated its discovery obligations by misrepresenting that it had already produced the relevant design materials. Dkt. # 97 at 2-4. Specifically, plaintiff points to her first request for production, sent on January 17, 2020, which

ORDER DENYING PLAINTIFF'S MOTION FOR
SANCTIONS - 4

asked defendant to "produce any and all documents that related to the design of the product, including the design file." *Id.* at 2. On February 18, 2020, 3M responded to this request, stating:

> 3M objects to this Request because it asks for information that is neither relevant nor proportional to the needs of the case. In emails to the parties, Plaintiff clarified that Plaintiff alleged only a failure to warn claim as opposed to a design defect claim. Plaintiff's Amended Complaint does not allege a design defect claim.

Dkt. # 49 at 9-10. In defendant's general objections to plaintiff's requests for production, defendant also argued that because plaintiff was not asserting a design deflect claim, "requests for documents related to design or manufacture are neither relevant nor proportional to the needs of the case. Such requests constitute an impermissible fishing expedition. 3M will not produce documents related to design or manufacture of the product unless reasonably related to otherwise discoverable requests." *Id.* at 9 (citations omitted).

This back and forth on the issue of design documents continued. On June 9, 2020, plaintiff's counsel sent an email to defendant's counsel Gerardo Alcazar, asking "[a]re you still objecting to responding to our design discovery requests" and stating "we must review the design, etc. records. I don't think 3M has provided them." Dkt. 98-1 at 13. Plaintiff's counsel further noted that plaintiff would "bring a motion to compel if 3M does not cooperate." *Id.* Mr. Alcazar responded, "Tim, we produced design documents on May 1, 2020. Please let me know what design documents you believe are missing." *Id.* at 16.

Evidently, plaintiff continued to believe she was missing design documents. On October 8, 2020, plaintiff filed a motion to compel discovery in which she noted that defendant was refusing to produce design-related documents on the grounds that such documents were not relevant where plaintiff had not alleged a design defect. Dkt. # 48 at 2. On October 9, 2020, defense counsel signed supplemental objections and responses to plaintiff's requests for production. Dkt. # 98 at 175-85. In response to plaintiff's first request for production, defendant stated:

> 3M objects to this Request because it asks for information that is neither relevant nor proportional to the needs of the case. In emails to the parties,

ORDER DENYING PLAINTIFF'S MOTION FOR
SANCTIONS - 5

> Plaintiff clarified that Plaintiff alleged only a failure to warn claim as opposed to a design defect claim. Plaintiff's Amended Complaint does not allege a design defect claim. As noted above, 3M has produced documents sufficient to show the final design and capabilities of the Nano Lok product at issue, as such documents go to the basis for the warnings that were provided with the Nano Lok. These are the only design-related documents that are relevant and proportional to this failure-to-warn case.

*Id.* at 176-77.

To the extent that plaintiff claims defendant's refusal to produce design-related documents prior to the Court's August 12 discovery order can provide a basis for sanctions, the Court disagrees.[1] While the Court ultimately agreed with plaintiff that these documents were relevant to the case, such a finding does not compel a conclusion that "3M unilaterally and without a legitimate basis objected and withheld critical evidence." Dkt. # 97 at 3. In the discovery order, the Court characterized this disagreement as a "genuine dispute" and declined to award attorney's fees to either party. Dkt. # 91 at 9.

Furthermore, defendant's response to plaintiff's discovery requests (and plaintiff's own responses to defendant, including communications between counsel and the motion to compel) demonstrate that defendant clearly articulated its position that "the Nano-Lok's design history, which goes back to 2011, was irrelevant to a failure-to-warn claim stemming from an incident that happened in 2018 and involved instructions issued in 2017." Dkt. # 111 at 5. Thus, although defendant represented that it had produced "the only design-related documents . . . relevant and proportional to this failure-to-warn case," plaintiff should have reasonably understood this to

---

[1] Plaintiff cites to Rule 37(d)(2) for the proposition that "the failure to produce the requested discovery on the ground that the discovery sought was objectionable, is not an acceptable excuse for failing to produce the discovery." Dkt. # 97 at 7. However, Rule 37(d)(2) read in full states, "A failure described in Rule 37(d)(1)(A) is not excused on the ground that the discovery sought was objectionable, unless the party failing to act has a pending motion for a protective order under Rule 26(c)." Fed. R. Civ. P. 37(d)(2). Rule 37(d)(1)(A) in turn describes (1) failure to appear for a deposition; (2) failure to respond to an interrogatory; and (3) failure to respond to a request for inspection. Here, plaintiff claims that defendant failed to respond to requests for production. Thus, Rule 37(d)(2) does not here. Plaintiff's citation to *In re Simonson*, Dkt. # 113 at 3, simply reaffirms the Court's reading of the rule. *See In re Simonson*, No. 04-15846, 2008 WL 4830807, at *12 (Bankr. W.D. Wash. Oct. 27, 2008).

ORDER DENYING PLAINTIFF'S MOTION FOR
SANCTIONS - 6

mean the documents defendant considered "relevant" in light of its discovery objections. That plaintiff subsequently brought a motion to compel the production of these design documents further strengthens the conclusion that plaintiff understood this. Accordingly, when defendant stated that it had provided the only "relevant" "design-related documents," it was referencing only the documents "sufficient to show the final design and capabilities of the Nano Lok product at issue," as defendant had already stated it believed that "documents related to design or manufacture are neither relevant nor proportional to the needs of the case."

Plaintiff's attempt to recast this already-resolved discovery dispute as grounds for sanctions is unconvincing.

### ii.   Discovery Responses Following Court's August 12 Order

Plaintiff next attempts to identify willful violations by comparing defendant's original discovery responses (described in the preceding section) with its representations regarding its production of documents following the Court's August 12 discovery order. Dkt. # 97 at 3-4. On September 16, 2022, defendant's counsel sent a letter to plaintiff's counsel concerning the deadlines for producing documents pursuant to the Court's August 12 discovery order. Dkt. # 98 at 134. In this letter, counsel for defendant explained why production of documents was taking longer than anticipated and stated, "Because 3M was clear that it opposed design-related discovery on relevance grounds, it did not start searching for that discovery until the Court's ruling." *Id.*

Plaintiff argues that this statement contradicts defendant's earlier representation that it had produced the "only design documents that are relevant and proportional to this failure-to-warn case," contending that it is impossible for defendant's 2020 assertions to be true if it had not begun searching for responsive design documents until 2022. Dkt. # 97 at 3-4.[2]

---

[2] Plaintiff also argues that Mr. Alcazar's response to plaintiff's counsel's June 2020 correspondence was similarly deficient because "Mr. Alcazar never indicated that 3M had not searched for the documents or was withholding any documents." Dkt. # 113 at 2. The Court finds this argument unpersuasive for the reasons discussed above.

ORDER DENYING PLAINTIFF'S MOTION FOR
SANCTIONS - 7

However, plaintiff's characterization of defendant's response is overly broad. In the same response that plaintiff quotes from 2020, defendant also stated that it objected to the request for production on the basis that design documents were not relevant to plaintiff's claims, and that defendant had only "produced documents sufficient to show the *final* design and capabilities of the Nano Lok product." Dkt. # 98 at 176-77 (emphasis added). Thus, it seems entirely possible to the Court that defendant did not search for or identify earlier design documents when responding to plaintiff's request for production, as it objected to such searches on the basis that the documents were not relevant and stated that the documents it had produced only showed the "final design and capabilities." Defendant was clear that it did not believe design history documents were relevant to the case, and plaintiff appears to have understood this position and disagreed with it. *See* Dkt. # 48 (plaintiff's motion to compel production of design-related documents); Dkt. # 55 at 3 (defendant explaining that it "has refused, however, to search for and produce documents related to the Nano-Lok SRL's design history").

That defendant has identified additional responsive documents pursuant to the Court's discovery order does not mean that defendant previously withheld documents. It is more likely that defendant, having been instructed by the Court that design history *is* relevant to the claims at issue in the case, is now searching through previously untouched records and identifying documents that are responsive to plaintiff's discovery requests. Accordingly, the Court declines to find bad faith or willfulness here.

### iii. Opposition to Motion to Compel

Plaintiff also argues that in defendant's opposition to plaintiff's motion to compel, defendant included a "false statement" meant to "mislead" both plaintiff's counsel and the Court. Dkt. # 97 at 6. Specifically, plaintiff takes issue with the fact that counsel for defendant stated in a declaration, "at no point in this lawsuit has 3M refused to produce evidence relevant to plaintiff's failure-to-warn claim." Dkt. # 56 at 2. Plaintiff argues that this is a "blatant false statement," because the documents recently disclosed pursuant to the Court's discovery order are "directly related to plaintiff's claims that appropriate warnings were not provided." Dkt. # 97 at 6-7. However, in the brief defendant filed in opposition to plaintiff's motion to compel,

ORDER DENYING PLAINTIFF'S MOTION FOR
SANCTIONS - 8

defendant clearly stated that "3M has refused, however, to search for and produce documents related to the Nano-Lok SRL's design history, including the development process for the Nano-Lok SRL before the final design was reached," and noted that "On multiple occasions, including in its objections to discovery requests, 3M has explained that those documents are not relevant to Plaintiff's failure-to-warn claim." Dkt. # 55 at 3.

Thus, plaintiff's argument – at bottom – appears to rehash the initial discovery dispute over whether the design history documents are relevant to plaintiff's failure to warn claims. Given that defendant clearly admitted it had not searched for design history documents prior to the Court's August 12 order, it is difficult for the Court to agree with plaintiff that the statement – taken in context – was misleading. That plaintiff believes documents produced in response to the Court's August 12 order are relevant to its failure-to-warn claim is unsurprising given the Court previously agreed that such background documents were relevant to plaintiff's claim and ordered the defendant to produce them. However, the fact that potentially relevant documents have been identified in defendant's recent production does not compel a conclusion that defendant acted in bad faith in objecting to the discovery request on relevance grounds.

### iv. Wrongful Redaction & Lack of Certification

Finally, plaintiff also argues that defendant is "still in violation of the Court's order because it has wrongfully redacted numerous documents ordered to be disclosed." Dkt. # 97 at 10-11. Plaintiff contends that defendant has redacted portions of disclosed documents even though "no protective order has been obtained." Dkt. # 98 at 11. The Court notes that based on the evidence presented by plaintiff, it does appear that certain words or phrases in the recently disclosed documents have been redacted by defendant. *See id.* at 142-71. Defendant does not address this allegation in its opposition brief. *See generally* Dkt. # 111. Neither the overall protective order issued in this case, Dkt. # 23, nor the discovery order, Dkt. # 91, authorize defendant to redact material. Thus, defendant may be impermissibly redacting information from

ORDER DENYING PLAINTIFF'S MOTION FOR
SANCTIONS - 9

its recent disclosures.[3] However, even assuming that is the case, the Court does not believe the extreme sanction of default is the appropriate response. Defendant is ordered to either explain why the material is redacted or provide plaintiff with un-redacted versions of the relevant documents within fourteen days of this Order.

Plaintiff also contends that "no 3M employee or attorney has certified or signed off on the completeness of the discovery ordered by the Court." Dkt. # 113 at 3. Defendant does not respond to this allegation in its opposition brief. *See generally* Dkt. # 111. Under Federal Rule of Civil Procedure 26(g)(1), "[e]very disclosure under Rule 26(a)(1) or (a)(3) . . . must be signed by at least one attorney of record in the attorney's own name." However, the Rules also provide that "Other parties have no duty to act on an unsigned disclosure, request, response, or objection until it is signed, and the court must strike it *unless* a signature is promptly supplied after the omission is called to the attorney's or party's attention." Fed. R. Civ. P. 26(g)(2) (emphasis added). Thus, the Court finds that this lack of certification is not sufficient grounds to enter the extreme sanction of default, and orders defendant to certify its recent disclosures within seven days of this Order.

**B. Five Factor Analysis**

Even if plaintiff could demonstrate "willfulness, fault, or bad faith," the five-factor analysis the Court must undertake before ordering default as a sanction militates against granting plaintiff's motion in this case. The relevant factors this Court must consider are "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other party; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions." *Adriana*, 913 F.2d at 1412. "The first two of these factors favor the imposition of sanctions in most cases, while the fourth cuts against a default or dismissal sanction. Thus the key factors are prejudice and availability of

---

[3] The Court also notes that the Local Civil Rules permit parties to redact information from confidential documents so that sealing is unnecessary, and that this may be the reason for the redactions. *See* LCR 5(g)(1). However, in that circumstance, the parties are expected to "meet and confer" regarding the redactions. *Id.*

ORDER DENYING PLAINTIFF'S MOTION FOR
SANCTIONS - 10

lesser sanctions." *Wanderer v. Johnston*, 910 F.2d 652, 656 (9th Cir. 1990). "What is most critical for case-dispositive sanctions, regarding risk of prejudice and of less drastic sanctions, is whether the discovery violations threaten to interfere with the rightful decision of the case." *Adriana*, 913 F.2d at 1412 (internal quotation marks and citations omitted). The Court finds that this is a usual case, and thus that the critical factors to be analyzed are prejudice and the availability of less drastic sanctions.

### i. Risk of Prejudice to the Other Party

Plaintiff contends that she has been "prejudiced to such an extent that a fair trial is not possible." Dkt. # 97 at 1. Foundational to the issue of prejudice is the content of the newly disclosed discovery material. Plaintiff argues that the recent disclosures include "smoking gun" documents, showing that in 2014 3M was aware that (1) "the use of a shock absorber attached to the lifeline would no longer make the product compliant for use on edges"; (2) "Nano-Lok was only good for overhead connections"; and (3) "users were confused" and 3M's "Instructions for Use needed to change." Dkt. # 113 at 5. Defendant, in contrast, contends that not one of the documents identified by plaintiff has any "material relevance." Dkt. # 111 at 6.

Plaintiff first identifies a Technical Bulletin written by Capital Safety, addressing the new American National Standard ANSI Z359.14 on Self Retracting Devices (SRD's), which "includes significant changes to the design and testing of 'Leading Edge SRD's.'" *See* Dkt. # 98 at 85. However, as defendant points out, this bulletin had already been identified and produced to plaintiff. *See, e.g.*, Dkt. # 60-1 at 91.

Plaintiff next identifies several emails from 3M employees discussing the proposed draft of the safety bulletin.

First, plaintiff discusses emails from Carl Firl, in which he notes that (1) adding a separate energy absorber into a "standard SRL" (Self-Retracting Lifeline) will, under the new safety guidelines, no longer make them leading edge compliant, which was a "change from what we have communicated in the past," Dkt. # 98 at 91 and (2) in light of these new safety guidelines, "standard SRLs" with energy absorbers "will be acceptable for standard overhead use," which again was a "shift from what we have communicated in the past," *id*. Defendant

ORDER DENYING PLAINTIFF'S MOTION FOR
SANCTIONS - 11

argues that plaintiff has misunderstood these emails, which discuss "adding an energy absorber to standard SRLs, not smaller, personal SRLs like the Nano-Lok," which have "built-in energy absorber." Dkt. # 111 at 7. Having reviewed the emails and the balance of the record, the Court – based on the information before it – is inclined to agree with defendant, as it appears the quoted statements from Mr. Firl refer to standard SRLs with add-on energy absorbers, which are distinct from the Nano-Lok.

Second, plaintiff discusses an email from Russ Martin, in which plaintiff claims Mr. Martin states that "Nano-Lok should be addressed" and "stated a second Technical Bulletin is necessary to address when and where an edge lanyard is to be used." Dkt. # 97 at 4. However, looking at the email, it appears that Mr. Martin suggested writing a follow-up bulletin "on fall clearances of both LE models and Energy absorber add-on models. Probably should address adding an energy absorber to a unit that already has an energy absorber (like Nano-Lok)." Dkt. # 98 at 90. Because the issue of adding an additional energy absorber to the Nano-Lok does not appear to be at issue in this case, it is unclear how this helps plaintiff's argument. While Mr. Martin's email does note that he thinks a second bulletin should be written, addressing when and where "the new Edge Lanyard" should be used, defendant challenges the relevance of this information, noting that Mr. Burrows was not wearing a Nano-Lok Edge at the time of the accident (although defendant claims one was available) and plaintiff was provided with Nano-Lok Edge instructions in 2018. Dkt. # 111 at 7-8.

Third, plaintiff discusses an email from John Fuke, the Technical Service Manager in Canada. Dkt. # 97 at 5. Plaintiff highlights Mr. Fuke's concern that the bulletin's "wording has to be more direct regarding the use of SRL LE's," noting that his concern is based on the fact that there had been "a couple of high visibility fatalities and near misses caused by improper product selection for Leading Edge work in the Greater Toronto area." Dkt. # 98 at 87. Defendant argues that this is irrelevant to plaintiff's case, because Kiewit Hoffman was required under a 2015 Sidebar Agreement with the Washington State Department of Labor and Industries following a fatality resulting from improper product selection to "use leading-edge products for

ORDER DENYING PLAINTIFF'S MOTION FOR
SANCTIONS - 12

the kind of work Mr. Burrows was doing." Dkt. # 111 at 8 (citing Dkt. 67-9 at 3-4, 11; Dkt. 66 at 4-6).

Finally, plaintiff points to an "entry" from June 2014 that appears to show defendant's personnel asking "Should we warn against foot-level tie off or leading edge on a product like Nano-Lok. Not to be used for foot level tie-off." Dkt. # 97 at 5 (citing Dkt. # 98 at 95). However, plaintiff also explains that Nano-Lok's instructions do *not* allow for "foot-level tie-off." *See* Dkt. # 97 at (quoting Nano-Lok instructions that state "the anchorage point must not be more than 3 ft (1m) below the dorsal D-ring"); Dkt. # 98 at 5-6 (quoting an email from Dave Schlengen stating "In the U.S., we only allow for 3' [tie-off] below the user's D-ring" while noting "[t]he [shock absorber] is sized to allow for a tie off at your feet in Europe").

Thus, having reviewed the record and relevant documents, the Court cannot agree with plaintiff that the newly disclosed documents qualify as "smoking guns."

Plaintiff claims that her delayed access to these documents caused prejudice in at least three broad areas: (1) in depositions; (2) at summary judgment; and (3) in preparing witnesses and motions more generally. Dkts. # 98 at 11-14, # 98-1 at 4-5. Having reviewed the newly disclosed documents identified by plaintiff, the Court is not convinced that the delayed receipt of this discovery caused plaintiff serious prejudice. Furthermore, the Court notes that plaintiff's particular claims that she would have approached her Rule 30(b)(6) deposition of Dave Schlangen differently if she'd had access to these documents, *see* Dkts. # 98-1 at 4, #98 at 11-12, are undermined by the fact that plaintiff chose to depose Mr. Schlangen early in the discovery process, while well aware of the fact that defendant was refusing to produce design-related discovery. *See* Dkt. # 24 (noting plaintiff's 30(b)(6) deposition for May 21, 2020); Dkt. # 48 (motion to compel). Additionally, plaintiff's claims that she was prejudiced in presenting her motion for summary judgment are similarly undermined by the fact that she moved for summary judgment while aware that defendant was refusing to produce design-related discovery, and that the Court did not grant either party's motion for summary judgment on the relevant issues. *See* Dkt. # 82. Additionally, if plaintiff believes that the new discovery demonstrates that "there can be no valid superseding cause argument for the death of Walter

ORDER DENYING PLAINTIFF'S MOTION FOR
SANCTIONS - 13

Burrows," she is not, as she claims "deprived of the opportunity" to explain that to the Court. Dkts. # 98-1 at 4, # 98 at 13. Trial is still months away and plaintiff is, for example, free to move for judgment as a matter of law. *See* Fed. R. Civ. P. 50.

### ii. Availability of Less Drastic Sanctions

Before imposing dismissal as a sanction, the Court also must consider "lesser sanctions, whether it tried them, and whether it warned the recalcitrant party about the possibility of case-dispositive sanctions." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 482 F.3d 1091, 1096 (9th Cir. 2007). Here, the fact that the Court has issued no previous warnings to defendant, nor even considered imposing lesser sanctions, makes clear that the extreme sanction of default is inappropriate in this case. *Cf. Hyde & Drath*, 24 F.3d at 1165 (special master "warned appellants that if they did not comply with his discovery order, he would recommend dismissal"); *Conn. Gen. Life Ins. Co.*, 482 F.3d at 1095 ("The district court warned defendants in July that it would 'entertain a motion for terminating sanctions by plaintiffs against any defendant who does not fully comply' with the order compelling discovery."); *Wanderer*, 910 F.2d at 655 ("Defendants have twice been warned, first by Judge Weigel and again by Magistrate Brennan, of the possible consequences of their failure to comply with this court's orders or the applicable rules of discovery. However, defendants have exhibited complete indifference to these warnings, the orders of this court and their discovery obligations, thereby thwarting plaintiffs' every attempt to secure basic, legitimate discovery.").

The Court is sympathetic to plaintiff's counsel, who are working through newly disclosed discovery against the time constraint of a fast-approaching trial date. However, plaintiff has not convinced the Court that defendant's actions in this case come close to warranting the imposition of default on liability, nor that attorney's fees are appropriate. Plaintiff is free to ask for additional time to review discovery (although plaintiff's counsel has made clear that they are not interested in a stay of the proceedings, *see* Dkt. # 97 at 11-12) and this Court has already awarded plaintiff a second Rule 30(b)(6) deposition to assist in their understanding of the product's design, *see* Dkt. # 91.

### III. Conclusion

ORDER DENYING PLAINTIFF'S MOTION FOR
SANCTIONS - 14

For all the foregoing reasons, plaintiff's "Motion for Sanctions and Default" (Dkt. # 97) is DENIED.

Defendant is ordered to either explain the redactions in its recently produced discovery or provide plaintiff with un-redacted versions of the relevant documents within 14 days of this Order and to certify its recent disclosure within 7 days of this Order.

IT IS SO ORDERED.

DATED this 17th day of January, 2023.

*Robert S. Lasnik*
Robert S. Lasnik
United States District Judge

ORDER DENYING PLAINTIFF'S MOTION FOR SANCTIONS - 15